**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 12 2013, 6:05 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT C.M.:

**ANDREW J. SICKMANN**
Boston Bever Klinge Cross & Chidester
Richmond, Indiana

ATTORNEY FOR APPELLANT R.M.:

**E. THOMAS KEMP**
Richmond, Indiana

ATTORNEY FOR APPELLEE:

**TROY HARMON**
DCS, Union County Local Office
Brookville, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF K.M. (Minor Child) and | ) ) ) ) ) |
| C.M. (Mother) and R.M. (Father), | ) ) |
| Appellants-Respondents, | ) ) |
| vs. | ) No. 81A01-1302-JT-58 ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) ) |

APPEAL FROM THE UNION CIRCUIT COURT
The Honorable Matthew R. Cox, Judge
Cause No. 81C01-1204-JT-43

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

C.M. ("Mother") and R.M. ("Father") appeal the trial court's involuntary termination of their parental rights to their four-year-old child, K.M. Finding that the evidence is sufficient to support the trial court's conclusion that there is a reasonable probability that the conditions that led to K.M.'s removal would not be remedied and that termination is in the child's best interest, we affirm.

## Facts and Procedural History

On January 19, 2011, Mother and Father were arrested when drugs and paraphernalia were found in their home. Police notified the Department of Child Services ("DCS") that no one would be at the home to care for Mother and Father's two-and-a-half-year-old daughter, K.M. Two days later, DCS filed a petition alleging that K.M. was a child in need of services ("CHINS"). The petition alleged that K.M. had been found in a house containing drugs and drug paraphernalia; that Mother and Father were unable to care for her due to their arrests; and that the home was cluttered and dirty. Mother and Father both admitted to the CHINS allegations, and K.M. was designated a CHINS and made a ward of DCS. In the CHINS participation order, Mother and Father were ordered to maintain regular contact with DCS; notify DCS of any address changes or arrests; allow DCS caseworkers to make announced or unannounced visits; enroll in, participate in, and complete required programs; keep all

appointments or provide advanced notice with good cause for absences; maintain suitable, safe, clean, and stable housing; secure and maintain a legal, stable, and adequate source of income; not use, consume, manufacture, trade, distribute, or sell any illegal controlled substances or permit them in the home; take prescription drugs only under a valid prescription and in doses specified by the prescribing physician; participate in home-based counseling; complete parenting and substance abuse assessment; submit to random drug/alcohol screens in a timely manner (with refusal to submit to screening deemed a positive result); follow all recommendations from any domestic violence assessment; and attend all visitations and comply with visitation rules.

On April 20, 2012, DCS filed a petition for involuntary termination of the parental relationship between Mother and Father and K.M. After conducting an evidentiary hearing, on January 9, 2013, the trial court issued an order terminating the parent-child relationship. The termination order contains findings of fact and conclusions thereon. The factual findings state in part,[1]

11. Mother and Father failed to comply with several of the orders of the Court as set forth in the Dispositional Order and Order of Participation. Specifically, Mother and Father failed in the following manner[:]

(1) Mother and Father have failed to inform DCS of changes in their address, leading to multiple attempts to contact them via mail being returned as undeliverable or unaccepted.

(2) Mother and Father failed to notify FCM [DCS family case manager] of their arrest and charges of theft.

---

[1] The trial court's order refers to the parties by their full names. We refer to them as Mother, Father, and K.M. where appropriate.

(3)      Mother and Father have missed multiple appointments with service providers, including approximately 2 and a half months continuously from YSB [Youth Service Bureau] by both of them, failure to attend appointments in Darke County [Ohio] by Mother, and failure to attend follow up appointments to his drug assessment by Father.

(4)      Mother failed to schedule an appointment with George Jr. Republic [counseling center] for an extended period before her assigned therapist left the company. Following that she was referred to Lifeline, but did not schedule an appointment before termination proceedings began.

(5)      Mother and Father have not maintained stable housing as they have each provided more than 10 addresses to DCS during this case and Father admitted to FCM that he was basically homeless and living in a tent.

(6)      Mother and Father have each used drugs after being ordered not to. Mother returned positive drugs screens on September 29, 2011 and October 24, 2011. She also refused to give a sample … on October 17, 2011 after providing a sample which did not register a temperature and refused to submit to a drug screen by DCS after the initial hearing in this case. Father returned a positive drug screen prior to the dispositional order on May 24, 2011 and returned a positive drug screen after the dispositional order on April 1, 2012. He also refused a drug screen after the initial hearing in this case.

(7)      Mother and Father missed multiple scheduled visitations in this case, cancelling 11 of 19 visits from January to April 2012 before failing to schedule any appointments after being informed that visits would be changed back to supervised visits.

12. The child has been placed with [foster parent], who has indicated that she is willing to adopt the child, since July of 2012.

13. Mother plead [sic] guilty to visiting a common nuisance and reckless possession of paraphernalia which the court accepted. She was sentenced to 180 days with 150 suspended in an order dated January 10, 2012 on those charges. (DCS Exhibit 25)

4

14. Mother plead [sic] no contest to one count of theft in the Clermont County [Ohio] Municipal Court. This plea was accepted and Mother was found guilty and sentenced to 90 days with 87 suspended on August 15th, 2012. (DCS Exhibit 13)

15. Father plead [sic] guilty to one count of public intoxication and one count of disorderly conduct in the Union Circuit Court. The court accepted this plea and found them [sic] guilty. He was sentenced to 180 days with 176 suspended on those charges on July 11, 2011. (DCS Exhibit 14)

16. Father plead [sic] guilty to one count of visiting a common nuisance and one count of reckless possession of paraphernalia in the Union Circuit Court. He was sentenced to 180 days with 150 suspended on those charges on August 9, 2011. (DCS Exhibit 15)

17. Father plead [sic] guilty to one count of theft in the Clermont County [Ohio] Municipal Court. The court accepted this plea and Father was sentenced to 180 days with 171 suspended on those charges on August 6, 2012. (DCS Exhibit 16)

18. Father plead [sic] guilty to one count of disorderly conduct in the Clermont County [Ohio] Municipal Court on August 24, 2012. (DCS Exhibit 17)

19. Mother and Father's youngest daughter, [P.M.], is in the custody of the Clermont County [Ohio] Department of Job and Family [S]ervices. The Clermont County [Ohio] Court of Common Pleas awarded them temporary custody based on allegations that the child was born drug positive finding that the child's best interests were served by placement outside the home. (DCS [E]xhibit 18)

20. Mother's daughter [Kay.M.] is in the custody of the Clermont County [Ohio] [D]epartment of Job and Family Services. The child was adjudged abused on June 16, 2011. (DCS Exhibit 23)

21. The Clermont County [Ohio] Department of Job and Family Services has moved for permanent custody of [Kay.M.] (DCS Exhibit 19)

22. In July of 2011, there was a domestic violence incident between Mother and Father which lead [sic] to their temporary separation and a

protective order. Later that month Mother returned to Father and asked that the protective order be dismissed. (DCS [E]xhibit 9)

23. The parents have not complied with the child's case plan. (DCS [E]xhibit 11)

24. The parents have not enhanced their ability to parent. (DCS [E]xhibit 11)

25. DCS has a satisfactory plan for the care and treatment of K.M., specifically adoption by her current foster parent[.]

Appellants' App. at 23-25.

The trial court specifically concluded that there is a reasonable probability that the conditions that led to K.M.'s removal will not be remedied because Mother and Father "have continued to use controlled substances, participate in criminal activity, and fail to obtain stable housing." *Id*. at 28. As support for this conclusion, the court cited Mother's and Father's "poor attendance in services and visits, outstanding child protection cases with other children, willful violation of court orders, and continued negative behaviors." *Id*. In support of its decision to terminate the parent-child relationship, the trial court also cited "the domestic violence incident, [Father and Mother's] continued drug use, criminal activity, and failure to maintain a stable residence." *Id*.

Mother and Father appeal the termination order. Additional facts will be provided as necessary.

**Discussion and Decision**

Mother and Father challenge the sufficiency of evidence to support the trial court's judgment terminating their parent-child relationship with K.M. When reviewing a trial

6

court's findings of fact and conclusions thereon in a case involving the termination of parental rights, we review for clear error, applying a two-tiered standard of review wherein we first determine whether the evidence supports the findings and then whether the findings support the judgment. *In re M.W.*, 943 N.E.2d 848, 853 (Ind. Ct. App. 2011), *trans. denied*. "We will set aside the trial court's judgment only if it is clearly erroneous." *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We neither reweigh evidence nor judge witness credibility. *In re A.I.*, 825 N.E.2d 798, 805 (Ind. Ct. App. 2005), *trans. denied*. Rather, we consider only the evidence and inferences most favorable to the judgment. *Id*.

In *Bester*, our supreme court stated,

> The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. A parent's interest in the care, custody, and control of his or her children is perhaps the oldest of the fundamental liberty interests. Indeed the parent-child relationship is one of the most valued relationships in our culture. We recognize of course that parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.

*Id*. (citations, quotation marks, and alteration omitted).

To obtain a termination of the parent-child relationship between Mother and Father and K.M., DCS was required to establish:

(A)  that one (1) of the following is true:

   (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

7

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)     that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)     that termination is in the best interests of the child; and

(D)     that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). In recognition of the seriousness with which we address parental termination cases, Indiana has adopted a clear and convincing evidence standard. Ind. Code § 31-37-14-2; *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied.*

Both Mother and Father assert that the evidence is insufficient to support the trial court's conclusion that a reasonable probability exists that conditions that led to K.M.'s

8

removal will not be remedied.[2]  At the outset, we note that neither Mother nor Father challenges any specific finding of fact.  Where the trial court's unchallenged findings clearly and convincingly support its ultimate decision to terminate parental rights, we find no error. *T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012), *trans. denied*. Mother and Father both raise a more general challenge to the trial court's conclusion concerning unremedied conditions.  In Conclusion 14, the trial court lists as supporting evidence for its conclusion Mother and Father's (1) continued use of controlled substances; (2) participation in criminal activities; (3) failure to obtain stable housing; (4) poor attendance in services and visits; (5) outstanding child protection cases as to their other children; (6) willful violation of court orders; and (7) continued negative behaviors. Appellants' App. at 28.

When assessing whether there is a reasonable probability that conditions that led to the child's removal will not be remedied, we must consider not only the initial basis for the child's removal, but also the bases for continued placement outside the home.  *A.I.*, 825 N.E.2d at 806.  Moreover, "the trial court should judge a parent's fitness to care for his [or her] children at the time of the termination hearing, taking into consideration evidence of changed conditions."  *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. "Due to the permanent effect of termination, the trial court also must evaluate the parent's

---

[2]  Father also challenges the trial court's conclusion that there is a reasonable probability that the continuation of their relationship with K.M. poses a threat to her well-being.  Indiana Code Section 31-35-2-4(b)(2)(B) requires DCS to prove only *one* of the three circumstances listed.  Because we find no error concerning the reasonable probability of unremedied conditions, we need not address the threat to the child's well-being.  Notwithstanding, we note that the trial court made specific findings and conclusions with respect to both unremedied conditions and threat to well-being.

habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.* For example, the court may properly consider evidence of a parent's substance abuse, criminal history, lack of employment or adequate housing, history of neglect, and failure to provide support. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). In making its case, "DCS need not rule out all possibilities of change; rather, [it] need establish only that there is a reasonable probability that the parent's behavior will not change." *In re Kay.L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007). "[A] trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth is permanently impaired before terminating the parent-child relationship." *Castro*, 842 N.E.2d at 372.

Here, the conditions that led to K.M.'s initial removal included the presence of drugs and paraphernalia in the home, the filthy conditions in the home, and the arrests of both Mother and Father. The record and unchallenged factual findings indicate that both Mother and Father continued to engage in criminal activity during the pendency of the termination proceedings, with both having July 2012 arrests and subsequent convictions for theft. FCM Denise Paxton testified that neither parent notified her of the convictions as required in the participation order. Tr. at 54. She further testified that Mother and Father had approximately thirteen different residences during the pendency of the proceedings, some in Indiana and some in Ohio and Kentucky. *Id.* at 53. She reported that at one point Father told her that he was homeless and living in a tent under a bridge. *Id.* at 54. Although Mother and Father participated in some services, they did not complete many of the services offered. They

10

missed numerous visitation appointments and scheduled services, and to the extent they blame work schedules and transportation issues, we note that their transient living situations (especially across state lines) complicated DCS's implementation of the ordered services.

Mother claims that the trial court erred in concluding that she continued to use controlled substances, since it was only Father, not she, who tested positive for drugs in April 2012. However, DCS Exhibit 18 undercuts her argument, indicating that when she gave birth to P.M. during the pendency of the termination proceedings, P.M. tested positive for high levels of opiates inconsistent with therapeutic use of Vicodin. Notably, P.M. was the second of Mother's children to be born with drugs in her system. Mother has a total of six children, and she has maintained custody of none of them. Both Mother and Father have a pattern of drug use, whether it be illegal drug use or misuse of prescription drugs. Their patterns of criminal activity and instability in housing and relationships simply do not bode well for successful parenting. To the extent that they offer numerous excuses for their failures, they invite us to reweigh the evidence, which we may not do. The evidence supports the trial court's conclusion that there is a reasonable probability that the conditions that led to K.M.'s removal will not be remedied.

Mother and Father also challenge the trial court's conclusion that the termination of their parental rights is in K.M.'s best interests. Again, we recognize their fundamental liberty interests in parenting K.M., but we are also mindful that their parental interests are not absolute, must be subordinated to K.M.'s interests, and may be terminated if they are unable or unwilling to meet their parental responsibilities. *In re G.Y.*, 904 N.E.2d 1257, 1259-60

11

(Ind. 2009). Although not dispositive, permanency and stability are key considerations in determining the best interests of a child. *Id*. at 1265. A determination of a child's best interests should be based on the totality of the circumstances. *In re A.P.*, 981 N.E.2d 75, 84 (Ind. Ct. App. 2012).

With respect to K.M.'s best interests, Court Appointed Special Advocate ("CASA") Karen Bowen specifically testified that "[K.M.'s] best interest would be served by termination and adoption." Tr. at 79. FCM Paxton testified more generally with respect to the case plan being changed from reunification to adoption, reporting that K.M. "had blossomed" while in the care of her pre-adoptive foster mother and was extremely attached to her. *Id*. at 56. Paxton explained that K.M. had become more outgoing and talkative, with no more negative behavior issues. In contrast, Paxton testified that "[Mother and Father] had not shown that they were committed to being responsible parents to K.M." *Id*. at 57. She cited their substance abuse, poor attendance at visits, unstable housing, problems with their other children, and criminal charges. She summed it up by stating, "[I]t's just been very hard to … determine where they are living and what they are doing." *Id*. Given the trial court's discretion to determine the credibility of witnesses, we cannot say that the trial court erred in giving credence to the CASA's and the FCM's professional opinions regarding K.M.'s best interests. *See In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010) ("the testimony of service providers may support a finding that termination is in the child's best interests."). Based on the foregoing, we find that the record and unchallenged findings support the trial court's conclusion that termination was in K.M.'s best interests. Accordingly, we affirm.

Affirmed.

BARNES, J., and PYLE, J., concur.